36825. MILES *et al.* v. STATE OF GEORGIA *et al.*

D<small>ECIDED</small> O<small>CTOBER</small> 18, 1957—R<small>EHEARING</small> <small>DENIED</small> O<small>CTOBER</small> 31, 1957.

612

*J. Edwin Peavy, Kopp & Peavy, Ben L. Patterson,* for plaintiffs in error.

*Dewey Hayes, Solicitor-General, T. J. Townsend, Memory, Barnes & Memory, S. F. Memory, Jr.,* contra.

CARLISLE, J. ■ In the advertisement which constituted the notice of the bond election and which was addressed to the qualified voters of Bacon County, Georgia, it was stated that the funds derived from the sale of such bonds would be "for the purpose of providing funds to build, construct and equip new educational facilities such as school buildings, libraries, auditoriums, cafeterias, gymnasiums, athletic fields and buildings, and structures useful in connection therewith; adding to, improving and equipping existing properties and facilities of the Bacon County School System and acquiring the necessary property therefor and paying expenses incident thereto." Paragraph 11 of the intervention attacked the wording of this advertisement on the ground that it "was so vague, indefinite, confused and misleading in character as to not fairly and adequately inform the voters of the purpose for which the bonds are to [be] issued, and it was not such notice as is required by § 87-201 of the Code of Georgia."

It is contended in connection with this ground of attack that the notice failed to specify how much of the $225,000 to be raised by the bond issue was to be used for each of the separate items enumerated in the advertisement, and that if the notice was intended to inform the voters that the funds were to be used to construct and equip any additional facilities, it was misleading in further indicating that it was to be used in adding to, improving and equipping existing facilities and that if the notice was intended to inform the voters that the funds were to be used to construct and equip gymnasiums and auditoriums, it misinformed and misled the voters by indicating that a portion of such funds was to be used for building other buildings and structures as set out in the notice. The plaintiff demurred to the allegations of this paragraph on the ground that it set forth

no legal cause for denying validation of the bonds and on the further ground that the allegations of that paragraph, when taken in connection with Exhibit "A" (a copy of the advertisement) attached to the intervention, showed on its face that the notice of the election was legal and regular in every respect. The trial court sustained this ground of demurrer and struck from the intervention paragraph 11.

This paragraph of the intervention and the demurrer thereto raises the question of whether or not the advertisement expressed a singleness of purpose in accordance with the rule laid down by the Supreme Court in *Rea* v. *City of LaFayette,* 130 *Ga.* 771 (61 S. E. 707). The notice was not subject to the criticism that it indicated that the bonds were to be voted for the purpose of providing funds for two or more distinct purposes. The purposes stated were all related to providing additions and improvements to school facilities in Bacon County. As was said in Hart *v.* Board of Education, 299 Missouri 36 (252 S. W. 441), and quoted in 4 A. L. R. 2d Anno. 617, 631, "If it can be said that the proposed improvements are not naturally related or connected, then it is clear that separate submissions are required; if on the other hand the several parts of the project are plainly so related that, united, they form in fact but one rounded whole, it is equally clear that they may be grouped together and submitted as one proposition." This test, as applied to the proposition submitted by the advertisement in this case, clearly shows that the advertisement did not submit more than one proposition to the voters. See *Moody* v. *Board of Commrs. &c. of Appling County,* 29 *Ga. App.* 21 (3) (113 S. E. 103) ; *Brand* v. *Town of Lawrenceville,* 104 *Ga.* 486 (2) (30 S. E. 954).

■ In paragraph 12 of the intervention, the intervenors alleged that the real purpose for the issuance of the bonds was to provide funds to build and equip a gymnasium and auditorium and that the advertisement, to the extent that it purported to inform the voters that the purpose of the bond issue was to raise funds to build and equip other buildings and structures and to improve and equip existing facilities of the school system, was misleading to and misinformed the voters. The plaintiff demurred to this paragraph on the same grounds as it demurred to paragraph 11 of the petition, and the trial court sustained this demurrer and

struck paragraph 12 from the petition. This ruling was not error. Allegations in a petition must yield to contradictory facts shown in exhibits attached thereto (*Harris* v. *Ackerman,* 88 *Ga. App.* 128 (1), 76 S. E. 2d 132), and where the facts shown by the exhibit contradict the facts alleged by way of conclusion in the petition, and where the facts shown in the exhibit show that the petitioner has no cause of action, the petition is thus subject to demurrer. In the instant case, the advertisement, a copy of which was attached to the petition as an exhibit, was the best evidence of the intention of the school board with respect to the use of the bond funds and in the absence of allegations of *facts* showing that the board had a secret, undisclosed intention to use the funds for some purpose other than that indicated by the advertisement or facts showing the deliberate perpetration of a fraud on the voters by the board, this advertisement must be taken as the best evidence of the board's intention with respect to the use of these funds. It follows that this paragraph was properly stricken on demurrer.

■ The intervenors alleged in their petition that the election held on March 19, 1957, was not properly and lawfully held in that there were not provided in the Ware, Taylor, Warnock and Rockingham districts, these districts being four of the seven districts in the county, booths or enclosures equipped with conveniences for marking the ballots and so arranged that it was impossible for anyone to see a voter in the act of marking his ballot; in that in all of the districts of the county there was a complete failure and disregard of the requirements of Code § 34-1908 with regard to the furnishing of printed instruction cards in each of the voting booths; in that in the Douglas district of said county, the election managers required more than 30 voters to place their ballots in the ballot box without permitting them to detach the number strip from the ballot, thus making it possible for anyone subsequently counting or handling the ballots to determine the exact manner in which a voter marked his ballot, and that these 30 ballots exceeded by at least 20 of the majority by which the election was carried. Error is assigned in the bill of exceptions on the judgment on the ground that the evidence showed these facts and therefore demanded the verdict and judgment invalidating the election.

"No election shall be defeated for noncompliance with the requirements of the law, if held at the proper time and place by persons qualified to hold it, unless it is shown that, by such noncompliance, the result is different from what it would have been had there been proper compliance." Code § 34-3101. Assuming that the evidence in this case was sufficient to prove each of these allegations, in view of the foregoing rule, it was not sufficient to require that the bond election be invalidated and set aside. The allegations of the petition in this regard merely show certain irregularities in conducting the election, but nowhere is it alleged that but for these irregularities the election results would have been different. Neither is this essential fact shown by the evidence. As was said by the Supreme Court in *Hastings v. Wilson*, 181 *Ga.* 305, 307 (182 S. E. 375), quoting Norman *v.* Indiana, 51 Ind. App. 425 (99 N. E. 812), " 'Where an election has been fairly and honestly conducted, it will not thereafter be invalidated by mere irregularities which are not shown to have affected the result. All provisions of the election laws are mandatory if enforcement is sought before election in a direct proceeding for that purpose; but after election they should be held directory only, in support of the result, unless of a character to obstruct the free and intelligent casting of the vote, or the ascertainment of the result, or unless the provisions affect an essential element of the election, or unless it is expressly declared by the statute that the particular act is essential to the validity of an election, or that its omission shall render it void.' " Under the evidence in this case and specifically in view of the testimony of the election managers who held the election in the districts in question which testimony was uncontradicted that they conducted the election the best they knew how and complied with the requirements of the law and in the absence of an affirmative showing that a different result would have been reached in the election had these irregularities not occurred, this assignment fails to show error.

■ Art. VII, sec. VII, par. I of the Constitution of the State of Georgia of 1945 (Code § 2-6001) limits the debt of any political division of this State (which includes the school district in question) to seven per cent of assessed valuation of taxable property. It is undisputed that this $225,000 bond issue, plus

existing bonded indebtedness of approximately $57,000 would exceed the permissible limit of $273,650.30 (representing seven per cent of total assessed valuation of $3,909,290), unless the school district be allowed to credit against this amount the sum of $53,768.37 which it holds in a sinking fund appropriated to the purpose of retiring outstanding bonds on maturity. That the general rule in other States is to the effect that such credit is permissible, see cases cited in 125 A. L. R. 1393, and such would seem to be the better practice, since the money has been set aside for this purpose and can not legally be used for any other. We are, however, bound by the decisions of our Supreme Court. In *Walsh* v. *City Council of Augusta, 67 Ga.* 293, it was held that redeemed bonds and cash on hand could not be so credited. The court stated that the city's assets, or indebtedness to her, could not be deducted from the debt owed so as to make that per centum less. Examination of the original record in the *Walsh* case shows that the municipality there alleged: "The sum named as the indebtedness of the municipality is subject to a deduction of $160,750, being the amount of bonds redeemed by and cash on hand held by the Sinking Fund Commission of the municipality under the Act of August 27, 1789, by which the bonded debt of the city is being steadily and largely reduced." This constitutes a holding that outstanding bonded indebtedness can not be reduced by the amount credited against it in a sinking fund for the purpose of redeeming outstanding bonds, but which has not actually been used for that purpose. That this constitutional provision is subject to strict construction, see *City Council of Dawson* v. *Dawson Waterworks Co., 106 Ga.* 696, 732 (32 S. E. 907); *Davis* v. *Dougherty County, 116 Ga.* 491, 494 (42 S. E. 764). It follows that the bond issue sought to be validated would raise the indebtedness of the school district beyond the constitutional limitation, for which reason the judgment validating the bonds was erroneous.

*Judgment reversed. Gardner, P. J., and Townsend, J., concur.*