Clifford ABTS, Lyle Ring, and John
Roberts, Appellants,

v.

BOARD OF EDUCATION OF SCHOOL
DISTRICT RE–1 VALLEY IN LOGAN
COUNTY, Colorado, Appellee.

No. 80SA377.

Supreme Court of Colorado,
En Banc.

Dec. 22, 1980.

As Modified on Denial of Rehearing
Jan. 12, 1981.

Allen J. Kincaid & Associates, Michael L. Fager, Brush, for appellants.

Miller & Swearingen, Frederick C. Kuhlwilm, Denver, for appellee; Sherman & Howard, Thomas B. Faxon, Jane E. Roberts, Denver, on brief.

LOHR, Justice.

This is an appeal by Clifford Abts, Lyle Ring, and John Roberts (contestors), pursuant to section 1–10–111(2), C.R.S. 1973, from a judgment of the Logan County court dismissing the contestors' challenges to the validity of a school bond election. We affirm.

On May 13, 1980, the Board of Education for School District RE–1 Valley in Logan County (Board) submitted the following question to the voters of the school district:

"Shall the Board of Education of School District No. RE–1, Valley, in Logan County, Colorado, be authorized to contract in one series or more, a bonded indebtedness of not exceeding $4,300,000 for the purpose of constructing a rural elementary school building, on the Caliche Junior/Senior High School site north of Proctor, of constructing a junior high school building in Sterling, of equipping and furnishing school buildings, but only in connection with a construction project for new buildings or for an addition to an existing school building, of acquiring or purchasing school grounds and of improving school grounds, all within and for the District, . . .?"

More that 4000 votes were canvassed,[1] and the measure passed by a margin of 77 votes.

Within the ten-day period prescribed by section 1–10–110(3), C.R.S. 1973, the contestors filed in Logan County court a notice of intent to contest the school bond election. Five grounds of contest were asserted: (1) that the designation of the precinct boundaries in the notice of the election was insufficient to satisfy statutory requirements; (2) that voters were permitted to mark their ballots in lead pencil instead of ink or indelible pencil; (3) that ballots of unqualified voters were received; (4) that a citizens committee favoring the school bond measure received financial assistance from RE–1 Valley School District for mailing brochures promoting the bond issue; and (5) that the ballot failed to separate the question concerning construction of a junior high school from the question concerning construction

---

1. This information is based on the brief of the contestors.

of an elementary school at a different location, and failed to permit separate votes on these questions. The notice of contest ended with a general allegation that the specified irregularities were "such as to affect the result of the school board [sic] election."

On June 2, 1980, the contestors filed a complaint [2] restating the contentions raised in the notice of intent to contest, with some elaboration. It also was averred in the complaint that county registration books were used in lieu of separate registration lists without a proper contract with the county clerk.[3]

The Board filed its answer and thereafter moved for judgment on the pleadings. After a hearing on the motion, the court dismissed the contestors' allegations concerning the pencil-marked ballots, the absence of a contract for use of county registration books, the receipt of votes of unqualified and unregistered voters, and the failure to divide the measure into separate questions. Dismissal was based upon failure to state a claim upon which relief can be granted. See C.R.C.P. 12(b); R.C.C.C.P. 312.[4] On the issue of proper notice, the trial court treated the motion as one for summary judgment, see C.R.C.P. 12(c), and granted summary judgment in favor of the Board. The court did not consider the question of the school district's financial assistance to a citizens committee to be appropriate for decision based on the pleadings alone, and the matter proceeded to trial on that issue.

During the course of trial the contestors sought and were denied permission to file a second amended complaint. At the close of the contestors' case the court granted the Board's motion to dismiss, pursuant to R.C.

C.C.P. 341(b)(1). The contestors appealed to this court.

## 1. PROCEDURE AND GENERAL STANDARD FOR REVIEW

■ Proceedings to contest school bond elections are governed by section 22–42–111(2), C.R.S. 1973. Pursuant to that statute, the county court for the county wherein the school district headquarters is situated has jurisdiction of all such contests. *Rowland v. Theobald*, 159 Colo. 1, 409 P.2d 272 (1965). The rules, practice, and procedures for contested elections for county officers, found in sections 1–10–110 and –111, C.R.S. 1973, apply insofar as applicable. Section 22–42–111(2), C.R.S. 1973. Appellate review of a county court's decision is available by direct appeal to this court. *Russell v. Wheeler*, 159 Colo. 588, 413 P.2d 700 (1966); *see* C.A.R. 1(c).

■ Our task in reviewing a judgment dismissing challenges to a school bond election is a limited one. If the dismissal of the contest is proper on any ground whether or not the trial court relied thereon, the judgment must be affirmed. *Graham v. Swift*, 123 Colo. 309, 228 P.2d 969 (1951).

## II. DISMISSAL OF FOUR GROUNDS FOR CHALLENGE

■ The contestors first argue that the trial court erred in granting the Board's motion for judgment on the pleadings with respect to four of the six grounds for challenge. In considering such a motion, the court must construe the allegations of the pleadings strictly against the movant and must consider the allegations of the opposing party's pleadings as true. *Strout Realty, Inc. v. Snead*, 35 Colo.App. 204, 530 P.2d

---

2. The parties have assumed that filing a complaint is the appropriate procedure. Although sections 1–10–110(3) and (4), C.R.S. 1973, appear to provide that the notice of intent to contest is to serve the function of a complaint, the appropriateness of the procedure followed is not material to the issues before us.

3. The complaint was amended later in respects not material here.

4. Although this case was tried in county court, the parties frequently refer to the rules of civil procedure applicable in district court. In absence of dispute, we shall consider the rules applicable to district court proceedings (C.R.C.P.) in this opinion where the rules applicable to county court proceedings (R.C.C.C.P.) and the relevant election contest statutes are not inconsistent with C.R.C.P. *See* section II.D of this opinion.

969 (1975).[5] Even under these stringent standards, however, we conclude that the contestors' arguments must fail.

We consider those arguments as to each of the four dismissed grounds for challenge under the following subheadings A, B, and C. Under subheading D we then consider whether the contestors should have been permitted to amend their complaint in an effort to cure the defects.

### A. Use of Pencils to Mark Ballots; Lack of a Contract for Use of County Voter Registration Books

On numerous occasions over a long span of time we have held that no election will be set aside unless the alleged irregularities might affect the result. *Jardon v. Meadowbrook-Fairview Metropolitan District*, 190 Colo. 528, 549 P.2d 762 (1976); *Kelly v. Novey*, 136 Colo. 408, 318 P.2d 214 (1957); *Suttle v. Sullivan*, 131 Colo. 519, 283 P.2d 636 (1955); *Clough v. City of Colorado Springs*, 70 Colo. 87, 197 P. 896 (1921); *Todd v. Stewart*, 14 Colo. 286, 23 P. 426 (1890).

Two of the irregularities alleged by the contestors and disposed of by the order granting partial judgment on the pleadings were permitting some voters to mark their ballots by lead pencils rather than ink or indelible pencil, *cf.* section 1–5–106(1), C.R.S. 1973 (requirement for general election), and using the county voter registration books without a proper contract between the Board and the county clerk authorizing such use, *see* sections 22–42–109,

22–31–106(3), and 22–31–103(2), C.R.S. 1973. Although the contestors alleged generally in the amended complaint that all of the specified irregularities and illegal votes affected more than seventy-seven votes "which is sufficient in number to change the result of the election," neither the notice of intent to contest nor the amended complaint contains any factual allegations indicating how the result was affected.

Where the complaint does not allege facts showing that the irregularities complained of changed the result of the election, the complaint does not state a claim. *Suttle v. Sullivan, supra; Todd v. Stewart, supra; see Kelly v. Novey, supra.* Therefore, the trial court properly granted partial judgment on the pleadings in favor of the Board on the grounds discussed in this section II.A.[6]

### B. Voting by Unqualified and Unregistered Voters

Where the cause of contest is that illegal votes have been received, the statute mandates factual specificity. Section 1–10–110(6), C.R.S. 1973, requires that "[w]hen the reception of illegal votes or the rejection of legal votes is alleged as the cause of the contest, a list of the number of persons who so voted, or offered to vote, shall be set forth in the statement of contestor . . . ." This provision requires a list of the names of persons whose votes were received illegally. *Graham v. Swift, supra; Schwarz v. County Court*, 14 Colo. 44, 23 P. 84 (1890).

---

5. In ruling on the motion, the trial court found that the four grounds for challenge "fail to state a cause of action upon which relief can be granted." *See* R.C.C.C.P. 312; C.R.C.P. 12(b)(5). In determining whether a motion to dismiss for failure to state a claim is to be granted, all matters well pleaded must be considered to be true, *Colorado National Bank v. F. E. Biegert Co.*, 165 Colo. 78, 438 P.2d 506 (1968), and the court can consider only those matters stated in the complaint, *Dillinger v. North Sterling Irrigation District*, 135 Colo. 100, 308 P.2d 608 (1957). As applied to the case before us, these standards are consistent with the standards for ruling on a motion for judgment on the pleadings. *See Strout Realty, Inc. v. Snead, supra.*

6. In their briefs, the contestors claim that they were prevented from obtaining the information necessary to prepare proper pleadings by unlawful acts and omissions of the Board. But "such facts should have at least been alleged in excuse in the first instance in order that contestors may take advantage thereof." *Schwarz v. County Court*, 14 Colo. 44, 47, 23 P. 84, 84 (1890). The Board, in its own brief, vigorously asserts that it has acted properly, and even cooperatively, with respect to the contestors' quest for information. The contestors' briefs contain many allegations of fact which are neither set forth specifically nor encompassed within the allegations in the notice of intent to contest or the amended complaint. We cannot and do not consider such allegations.

Because the contestors did not comply with the statute, the trial court could not consider the challenge. *Id.*[7]

### C. *Failure to Divide the Measure into Separate Questions*

The trial court also rejected the contestors' contention that the bond issue constituted two distinct proposals which should have been submitted separately to the voters. Article XI, § 6, of the Colorado Constitution provides that no political subdivision of the state shall contract any general obligation debt by loan in any form "unless the question of incurring the same be submitted to and approved by a majority of the qualified taxpaying electors[8] voting thereon," with certain exceptions not applicable here. We have construed a similar prior constitutional provision with respect to creation of municipal debts[9] to require that each purpose for which a debt is to be created must be separately stated and submitted to the electors. In *City of Denver v. Hayes,* 28 Colo. 110, 63 P. 311 (1900), we said:

"The purpose of the framers of the constitution, which they expressed in the section under consideration, and the object of the general assembly which is embodied in the city charter, were to prohibit municipal authorities from creating a debt for municipal purposes and from issuing bonds unless a majority of the legal electors of the city gave their consent thereto. By the proceedings under review no opportunity was given by the city council to the electors to express their will as to incurring a debt for any particular purpose, and the voice of the electors has never been heard. Neither the constitutional limitation nor the statutory provisions expressly declare that only one purpose may be submitted at the same election, nor that, if more than one purpose may thus be submitted, each

shall be separately stated. But the object of neither can be attained, and effect to the language in which they are expressed cannot be given, unless such purposes be separately stated, and the amount proposed to be applied to each particular purpose designated. This must be done, not only in the ordinance which provides for the submission, but in the election notice; and the ballots must be so prepared that every elector may declare his choice as to each purpose, and the amount proposed to be applied thereto must, also, be stated."

28 Colo. at 114, 115, 63 P. at 313. The difficulty lies in determining what constitutes more than one purpose.

In *City of Denver v. Hayes, supra,* the factual circumstances made the constitutional violation rather clear. There, the city had proposed to incur a lump sum indebtedness for eleven distinct and independent projects, ranging from constructing a new auditorium to paying or refunding bonded indebtedness. Here, the purpose is acquiring and improving school grounds and constructing and furnishing school buildings. Whether multiple purposes are present in a proposal to construct and furnish more than one structure in more than one location in a school district is a question as to which *City of Denver v. Hayes, supra,* offers only general guidance.

The requirement that each bond election question be limited to a single purpose exists in many other jurisdictions. The test applied to determine the validity of a bond issue having more than one object or funding more than one structure is whether there exists a natural relationship between the various structures or objects united in one proposition so that they form but one rounded whole. *See Aylmore v. Hamilton,* 74 Wash. 433, 133 P. 1027 (1913); Annot., 4 A.L.R.2d 617, § 6 (1949), and cases cited

---

7. *See* n. 6, *supra.*

8. Although not involved in this case, the limitation of the franchise to "taxpaying" electors in the law of another state has been held to violate the equal protection clause of the Fourteenth Amendment to the United States Consti-

tution. *City of Phoenix v. Kolodziejski,* 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970).

9. *Colo. Const.* Art. XI, § 8 (repealed 1970). The subject matter is now covered in *Colo. Const.* Art. XI, § 6.

therein. We have used a similar test in slightly different contexts. *See People ex rel. Moore v. Perkins*, 56 Colo. 17, 137 P. 55 (1913) (municipal charter amendment does not combine distinct and separate questions if the provisions thereof are naturally related and connected with one subject); *People ex rel. Elder v. Sours*, 31 Colo. 369, 74 P. 167 (1903) (proposed amendment to the Colorado Constitution which embraces more than one subject is not objectionable on that ground if the subjects contained therein are germane to the general subject of the amendment).

▉ The contestors do not contend that a bond issue may not include both the construction and the furnishing of a single school building. The thrust of their argument is that the issuance of bonds to finance construction of two new school buildings in different communities within the district cannot be submitted to the voters as a single proposition unless it can be factually established that there is a natural relationship between them. We conclude that no additional facts are necessary to establish that the school bond measure in question involves naturally related uses and has but one purpose. *See City of Denver v. Hayes, supra.*

▉ Objects for which an indebtedness is to be incurred are more likely to be naturally related where the governmental entity proposing the indebtedness performs a limited function. For example, a school district has a relatively limited sphere of responsibility. The only objectives for which a school district may seek bond financing, except for funding floating indebtedness, involve acquisition, construction, equipping, and improving school facilities. Section 22–42–102, C.R.S. 1973 (1979 Supp.). Such objectives are necessarily related in that they all concern the structures, furnishings, and equipment needed to serve school children in the district. The purpose may be characterized as providing proper school facilities; the fact that multiple facilities are required does not mean that a project has more than one purpose. *See Kimsey v. Board of Education*, 211 Kan. 618, 507 P.2d 180 (1973).

States which have considered this question have concluded that a school bond election may relate to acquisition, construction, and equipping of separate school facilities without offending requirements that the submission of such matters to the voters be limited to a single proposition or purpose. *Parks v. School District*, 22 Ariz. 18, 193 P. 838 (1920) (school bond proposal for building a ward school, an addition to another school, and additional rooms on the ground of a third school or elsewhere, and for the supplying of the same with furniture and apparatus, was a single proposition); *Lilly v. Crisp County School System*, 117 Ga.App. 868, 162 S.E.2d 456 (1968) (issuance of bonds to finance construction and equipment of school buildings and for improving, renovating, repairing, and equipping existing educational facilities of a particular county school system was a single proposition to provide additions and improvements to school facilities in the county); *Miles v. State*, 96 Ga.App. 610, 101 S.E.2d 173 (1957) (bond election to provide funds to construct and equip "school buildings, libraries, auditoriums, cafeterias, gymnasiums, athletic fields and buildings" related to the single purpose of improving school facilities); *King v. Independent School District*, 46 Idaho 800, 272 P. 507 (1928) (school bond election for a building; addition and improvement of another school; moving bungalows and improving a third school site; and furnishings and repairs held to state only one purpose, specifically, providing schools and equipment for the district); *Howard v. Independent School District*, 17 Idaho 537, 106 P. 692 (1910) (bond election to purchase three school sites and erect three separate school buildings in different sections of the school district and furnishing each of the buildings held to constitute one common purpose, namely, the equipment and maintenance of public schools in the district); *Roll v. Carrollton Community School District*, 3 Ill.2d 148, 121 N.E.2d 1 (1954) (proposition for bond issue to purchase site and build high school, to build attendance center, and to construct addition to existing

school embodied one general purpose); *Kimsey v. Board of Education, supra* (proposition to issue bonds for construction of "a building or buildings for junior high school purposes and for senior high school purposes" was not invalid as involving more than one proposition); *Buhl v. Joint Independent Consolidated School District,* 249 Minn. 480, 82 N.W.2d 836 (1957) (proposal for bond issue for purpose of acquisition and betterment of schoolhouses in the district was a single proposition); *Becker v. Smith,* 335 Mo. 1046, 75 S.W.2d 574 (1934) (proposition to vote bonds to erect and furnish two schoolhouses, each on a different site of an existing school, held to constitute a single proposition); *Johnston v. Board of Education,* 65 N.M. 147, 333 P.2d 1051 (1958) (proposition for erecting school buildings and purchasing school sites comprised a single proposition); *see* Annot., 4 A.L.R.2d 617 (1949).

We conclude that the cited cases reflect the appropriate resolution of the issue and that the question submitted to the voters in the present case is limited to a single purpose.

### D. *Motion to Amend Complaint*

After four of their grounds for challenge had been dismissed, and during the trial, the contestors moved to file a second amended complaint. They contend that the trial court abused its discretion in denying that motion. We disagree.

■ In support of their position the contestors cite the provision of C.R.C.P. 15(a) that leave to amend "shall be freely given when justice so requires." However, the amendment provisions of the rules of civil procedure normally applicable to a civil action do not govern an election contest. We have held that the statutes provide a complete system of procedure for the contest of an election and that, absent a provision permitting amendments, no amendments of substance can be allowed. *Town of Sugar City v. Board of County Commissioners,* 57 Colo. 432, 140 P. 809 (1914); *Kindel v. Le Bert,* 23 Colo. 385, 48 P. 641 (1897); *but see Nicholson v. Stewart,* 142 Colo. 566, 351 P.2d 461 (1960). The absence of authorization for amendment in the election contest statute reasonably can be construed to reflect legislative intent that prompt resolution of election disputes must be achieved in order that the machinery of government not be slowed any more than strictly necessary to permit such disputes to be fairly resolved.

The fact that a complaint does not appear to be authorized in this election contest proceeding, *see* note 2 *supra,* casts serious doubt on the applicability of C.R.C.P. 15(a) and R.C.C.C.P. 315. Furthermore, the amendment provision of C.R.C.P. 15(a) has no counterpart in the county court rules. In county court the relevant rule prescribes that "[a]mendment to pleadings shall not be permitted except by order of court." R.C.C.C.P. 315.

■ The contestors' amendment was sought during trial, some two months after the notice of intent to contest was filed and subsequent to the filing of the Board's answer. In such a case, even if C.R.C.P. 15(a) were specifically applicable, the contestors could amend only with permission of the court. The transcript of the court's ruling and of the proceedings upon which it was based has not been made a part of the record on appeal. Even if the amendment were otherwise permitted, in the absence of the transcript we are unable to state that the trial court abused its discretion in denying the contestors' motion to amend. *Rechnitz v. Rechnitz,* 135 Colo. 165, 309 P.2d 200 (1957).

### III. SUMMARY JUDGMENT ON ONE GROUND FOR CHALLENGE

We next consider whether the trial court was correct in granting summary judgment against the contestors on the question of the adequacy of the notice of school bond election.

Section 22-31-113, C.R.S. 1973, which is made applicable to the school bond election procedure by section 22-42-102(3), C.R.S. 1973, requires that notice of a school bond election specify "the boundaries of school election precincts." The contestors allege that the published notice of election insufficiently designated the election precinct boundaries.

The relevant part of the published notice provided as follows:

"PUBLIC NOTICE IS HEREBY GIVEN that pursuant to law and requisite action of the Board of Education of School District No. Re–1, Valley (the "District" or the "School District"), in the County of Logan and State of Colorado, a special school bond election has been called and will be held in the District on Tuesday, May 13, 1980.

The boundaries of the school election precincts for such election (being the exterior boundaries of all of the general election precincts designated below or such portions thereof as lie within the District) and the voting places in the school election precincts are the same as those for the last regular biennial school election, held on May 8, 1979, and are as follows:

| School Election Precinct Number | Consists of General Election Precinct Nos. | Polling Place |
| --- | --- | --- |
| 1 | 14 | Crook School |
| 2 | 12, 13 and 15 | Iliff School |
| 3 | 3, 4, 9, 10 and 11 | Campbell School |
| 4 | 5, 6, 7, 8 and 16 | Franklin Elementary School |
| 5 | 1 and 2 | Hagen Elementary School |
| Absentee | | Central Administrative Offices 119 North 3rd Avenue Sterling, Colorado |

A map showing the school election precincts and polling places is on file in the administrative offices of the District for examination by all electors of the District."

■ The contestors argue that the Board should not have designated school district precincts in terms of the general election precincts because the boundaries of the two political subdivisions are not fully coincident. Although the notice is not a model, we conclude that it is adequate.

Section 22–42–105, C.R.S. 1973, specifically permits the Board to "divide the [school] district into election precincts consisting of one or more whole general election precincts wherever practicable . . . ." In *Russell v. Wheeler*, 165 Colo. 296, 439 P.2d 43 (1968), we held that the description of the boundaries of school precincts by reference to general election precincts substantially complied with the requirement that the boundaries of the school election precincts be set forth in the notice of the election. We added, however, that "[w]here school election precincts . . . are of different boundaries than the county election precincts, a problem not present here, a map outlining the school election precincts might be necessary in an election notice to adequately inform the voting public." *Id.* at 307, 439 P.2d at 48. There was no map in the notice published in this case. We must determine whether, in absence of such a map, substantial compliance with section 22–31–113, C.R.S. 1973, was achieved.

The notice itself specified that some of the general election precincts or groups of precincts embrace more territory than the corresponding school election precincts. Thus, some parts of the general election precincts designated in the notice are not included within the school district. All those voters who resided within the district, however, were directed to their correct general election precincts and could not have been misled. The Board's designation is unspecific only in that persons residing within the designated general election precincts could not determine from the notice alone whether they also were within the school district and therefore were eligible to vote in the school district election. But any confusion in this regard could have been alleviated by reference to the map which the notice specifically stated was available for examination in the administrative offices of the district. Because the notice correctly directed all properly registered voters in the school district to their correct polling places, and advised all persons in doubt where they could learn whether they resided within the district, we hold the notice was adequate to inform the voting public and effected substantial compliance with the statute. *See Russell v. Wheeler*, 165 Colo. 296, 439 P.2d 43 (1968).

## IV. TRIAL OF FINAL GROUND FOR CHALLENGE

The only issue that went to trial in this contest was the alleged financial subsidy

given by the school district to a citizens committee supporting the bond issue. At the close of the contestors' case the Board moved to dismiss on the basis that upon the facts and the law the contestors had shown no right to relief. *See* R.C.C.C.P. 341(b)(1). The trial court granted that motion and the contestors now challenge that ruling.

The transcript of the hearing below was not made a part of the record on appeal. The only evidence before us is a deposition of the treasurer of the citizens committee and several documentary exhibits relating to the committee's use of the district's bulk mailing permit. Without the opportunity to review all of the evidence, we cannot say that the county court erred in dismissing the case. *See Rechnitz v. Rechnitz, supra.* The evidence which we do have before us does not establish that, if any irregularities did occur, they were significant enough to affect the result of the election. *See* section II.A of this opinion.

The judgment of the trial court is affirmed.