Morgan Smith Executive Director Department of Local Affairs 1313 Sherman Street, Room 518 Denver, Colorado 80203
Dear Mr. Smith:
This letter is in response to your request for an attorney general's opinion regarding the authority of a fire protection district to incur general obligation indebtedness without an election. You also have inquired as to the obligation of residents of territory excluded from a special district to contribute to the payment of indebtedness incurred prior to the exclusion.
QUESTIONS PRESENTED AND CONCLUSIONS
1. Whether C.R.S. 1973, 32-1-1101(2) (Supp. 1982) may be interpreted to allow a fire protection district to incur general obligation indebtedness in an amount less than 1 1/2 percent of the assessed valuation of the taxable property in that district without an election?
 My conclusion is that the statute may not be so interpreted.
2. What type of "indebtedness" continues to be a financial responsibility of residents of territory excluded from a special district?
 My conclusion is that residents of the excluded territory are liable for their share of any special district indebtedness existing prior to the effective date of the exclusion order, other than revenue bond indebtedness or other indebtedness specifically excluded in C.R.S. 1973, 32-1-503(1) (Supp. 1982).
ANALYSIS
1. Colo. Const. art. XI, § 6(1) provides:
 No political subdivision of the state shall contract any general obligation debt by loan in any form, whether individually or by contract pursuant to article XIV, section 18 (2) (a) of this constitution except by adoption of a legislative measure which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, specifying the purposes to which the funds to be raised shall be applied and providing for the levy of a tax which together with such other revenue, assets, or funds as may be pledged shall be sufficient to pay the interest and principal of such debt. Except as may be otherwise provided by the charter of a home rule city and county, city, or town for debt incurred by such city and county, city, or town, no such debt shall be created unless the question of incurring the same be submitted to and approved by a majority of the qualified taxpaying electors voting thereon, as the term "qualified taxpaying elector" shall be defined by statute.
(emphasis supplied).
With certain exceptions not applicable to special districts, the above constitutional provision specifically prohibits any political subdivision of the state from contracting any general obligation debt without an election. Abts v. Board ofEducation of School District RE-1, 622 P.2d 518, 523 (Colo. 1981).
However, the Special District Act contains the following pertinent provision:
 Whenever the board determines, by resolution, that the interest of the special district and the public interest or necessity demand the acquisition, construction, installation, or completion of any works or other improvements or facilities or the making of any contract with the United States or other persons or corporations to carry out the objects or purposes of such district, requiring the creation of a general obligation indebtedness exceeding one and one-half percent of the valuation for assessment of the taxable property in the special district, said board shall order the submission of the proposition of issuing such general obligation bonds or creating other general obligation indebtedness, except the issuing of revenue bonds, at an election held for that purpose.
C.R.S. 1973, 32-1-1101(2) (Supp. 1982).
The Special District Act further provides that the board resolution shall fix the date of the election, shall include the declaration of public interest or necessity required, and shall recite:
 (I) The objects and purposes for which the indebtedness is proposed to be incurred;
 (II) The estimated cost of the works or improvements, as the case may be;
 (III) How much, if any, of said estimated cost is to be defrayed out of any state or federal grant;
 (IV) The amount of principal of the indebtedness to be incurred therefor; and
 (V) The maximum net effective interest rate to be paid on such indebtedness.
C.R.S. 1973, 32-1-1101(3)(a) (Supp. 1982).
The Act continues to provide that the constitutionally required election is to be held and conducted in the manner provided in C.R.S. 1973, 32-1-801, -835 (Supp. 1982). In conclusion it states that if the board's proposition is approved by the voters, the board then is authorized to incur the indebtedness described therein, for the purposes, in the amount, and within the interest rate provided in the proposition. C.R.S. 1973, 32-1-1101(4) (Supp. 1982).
It is settled that a legislative enactment is entitled to a presumption of constitutionality. Mr. Lucky's, Inc. v.Dolan, 197 Colo. 195, 591 P.2d 1021, 1023 (1979); Earl Sons Tire Center v. City of Boulder, 192 Colo. 360,559 P.2d 236 (1977). Therefore, a statute must be construed in a manner consistent with constitutional requirements whenever such a construction is reasonable and practicable. People v.Roybal, 618 P.2d 1121 (Colo. 1980); Colorado StateBoard of Medical Examiners v. Jorgensen, 198 Colo. 275,599 P.2d 869 (1979).
C.R.S. 1973, 32-1-1101(2) (Supp. 1982) may be construed in a manner that does not conflict with Colo. Const. art. XI, § 6. Read with Colo. Const. art. XI, § 6, it is reasonable to conclude that the sole purpose for this statutory section is to impose requirements in addition to the election requirement of § 6 on a special district which intends to incur a general obligation indebtedness in excess of 1 1/2 percent of the district's assessed valuation.
Accordingly, it is my opinion that under Colo. Const. art. XI, § 6, a special district may not incur a general obligation debt in any amount without an election; and under C.R.S. 1973,32-1-1101(2) (Supp. 1982), a special district may not incur a general obligation debt over the 1 1/2 percent limitation without meeting the additional requirements of C.R.S. 1973, 32-1-1101(2), (3) (Supp. 1982).
2. The Special District Act contains the following provisions pertaining to the continuing liability of excluded territory:
 Territory excluded from a special district pursuant to the provisions of this part 5 shall not be subject to any property tax levied by the board for the operating costs of the special district. For the purpose of retiring the special district's outstanding indebtedness and the interest thereon existing at the effective date of the exclusion order, the special district shall remain intact and the excluded territory shall be obligated to the same extent as all other property within the special district, but only for that proportion of such outstanding indebtedness and the interest thereon existing immediately prior to the effective date of the exclusion order. The board shall levy annually a property tax on all such excluded and remaining property sufficient, together with other funds and revenues of the special district, to pay such outstanding indebtedness and the interest thereon. The board is also empowered to establish, maintain, enforce, and, from time to time, modify such service charges, tap fees, and other rates, fees, tolls, and charges, upon residents or users in the area of the special district as it existed prior to the exclusion, as may in the discretion of the board be necessary to supplement the proceeds of said tax levies in the payment of the outstanding indebtedness and the interest thereon. In no event shall excluded territory of a special district become obligated for the payment of any bonded indebtedness created after the date of the court's exclusion order.
C.R.S. 1973, 32-1-503(1) (Supp. 1982).
It is clear from the express language of the above statute that residents of excluded territory are not responsible for the payment of any bonded debt created after the date of the exclusion order. Additionally, the statute provides that residents of excluded territory are not liable for the payment of any property tax levied after the effective date of the exclusion order to pay operating costs of the district. See City and County of Denverv. Board of Directors of Castlewood, 37 Colo. App. 496,549 P.2d 1090 (1976). Furthermore, the Colorado Supreme Court has held that revenue bonds repayable from project revenues rather than from general tax revenues do not constitute indebtedness of the district. Allardice v. Adams County,173 Colo. 133, 476 P.2d 982 (1970); Perl-Mack CivicAssociation v. Board of Directors, etc., 140 Colo. 371,344 P.2d 685 (1959).
Therefore, it is my opinion that residents of excluded territory are required to repay any outstanding indebtedness of the district existing at the effective date of the exclusion order, unless that indebtedness is revenue bond indebtedness, operating costs payable by a tax levied after the date of the exclusion order, or bonded debt created after the date of the exclusion order.
SUMMARY
In conclusion, C.R.S. 1973, 32-1-1101(2) (Supp. 1982) may not be interpreted to allow a fire protection district to incur general obligation indebtedness in an amount less than 1 1/2 percent of the assessed valuation of the taxable property in that district without an election; and residents of territory excluded from a special district are liable for their proportionate share of any indebtedness of the district existing at the date of the exclusion, other than revenue bond debt, or other indebtedness specifically excluded by C.R.S. 1973, 32-1-503(1) (Supp. 1982).
Very truly yours,
 DUANE WOODARD Attorney General
SPECIAL DISTRICTS LOANS REVENUE BONDS
C.R.S. 1973, 32-1-1101(2) (Supp. 1982)
C.R.S. 1973, 32-1-503(1) (Supp. 1982)
Colo. Const. art. XI, § 6
AFFAIRS, LOCAL, DEPT. OF
A fire protection district may not incur general obligation indebtedness in any amount without an election.
Residents of territory excluded from a special district continue to be liable for any indebtedness of the district existing on the exclusion date, other than revenue board debt, operating costs payable by a tax levied after the exclusion date, or bonded debt created after the exclusion date.