Justice BENDER
 

 delivered the Opinion of the Court.
 

 I. Introduction
 

 This appeal involves challenges to a bond issue approved by voters in the City of Golden contesting the validity of the ballot title and seeking declaratory and equitable relief because the City spent bond funds on projects not authorized by the purpose of its referendum.
 

 The trial court ruled that the ballot title challenge was time-barred and dismissed plaintiffs' additional claims on the basis that they raised political questions. Because municipal election contests are excluded from the court of appeals' jurisdiction, we transferred plaintiffs' appeal to us. We affirm the trial court's ruling that plaintiffs' challenge to the ballot title is time-barred. Concerning plaintiffs' alternate theories of relief, we reverse the trial court's ruling and hold that these claims do not present political questions.
 

 Because the trial court will need clarification of Colorado law to address the contentions of the parties, either by summary judgment or at trial, we review the law governing a municipality's discretion concerning the expenditures of bond proceeds. We hold that a city's expenditures are appropriate provided that the expenditures do not materially depart from the purpose of a bond measure and that necessary expenditures incidental to an authorized purpose are within a city's discretion, and therefore permissible. The ques tion of whether the City's expenditures and modifications are within its discretion is to be resolved by the trial court. Hence, we affirm in part and reverse in part and return this case to the trial court to conduct further proceedings consistent with this opinion.
 

 II. Facts and Proceedings Below
 

 The City of Golden held an election in which it submitted Referred Issue 2A for voter approval. The issue proposed $26.5 million in bond sales to acquire and construct park and recreation facilities.
 
 [1]
 
 - Voters passed the measure by a majority vote.
 

 
 *662
 
 After the passage of Referred Issue 24, the City Council passed an ordinance to authorize the issuance of sales and use tax revenue bonds to fund the acquisition, development, and construction of land, recreational facilities, and open space. Subsequently, the City issued $21.6 million of bonds to finance the construction of a golf course, an aquatic park, and to purchase land for the park system. Although not specifically enumerated in Referred Issue 2A, the City also undertook several tasks to prepare the property for these uses.
 
 [2]
 

 Soon after the City issued the bonds, it heard recommendations from the Parks and Recreation Advisory Board on the projects to be funded by the remaining $4.8 million of bonds authorized by voters and conducted a series of public Council meetings to review the recommendations. Based upon the recommendations and meetings, the City Council concluded that it could provide the same amenities to the public by enhancing existing facilities instead of building a stand-alone satellite community center. The Council therefore adopted a resolution to issue the remaining $4.8 million of bonds in part to enhance the existing community center and gymnasium instead of building a satellite community center as originally provided for in Referred Issue 2A.
 

 Nearly a year after the election, plaintiffs, who are residents of and taxpayers to the City of Golden, filed a declaratory judgment action in the trial court alleging that Referred Issue 2A was invalid because it included multiple, separate purposes on a single ballot title. Alternatively, plaintiffs sought a declaratory judgment that (1) the City must spend bond proceeds only on express .enumerated purposes, and (2) that the ordinance and the resolution were invalid to the extent that they authorized the expenditure of bond proceeds for purposes not enumerated in Referred Issue 2A. Finally, plaintiffs sought relief based upon promissory or equitable estoppel to require the City to expend the bond proceeds as represented by the City.
 

 The City filed a motion to dismiss claiming that the ballot title challenge was untimely and therefore, the court lacked jurisdiction to review it,. Additionally, it argued that plaintiffs' alternate theories for relief did not present claims for which relief could be granted because the contested expenditures were within the City's discretion. In support of its motion, the City submitted several affidavits of city officials and contracts concerning the City's land use and acquisition. In response to the motion, plaintiffs submitted an affidavit and a copy of the City Council's ordinance authorizing the issuance of the bonds.
 

 Concerning plaintiffs' challenge to the ballot title, the trial court held that the claim was time-barred pursuant to the election contest statute of limitations provisions of see-tions 1-11-208.5 and 218(4), 1 C.R.S. (2002) and dismissed the claim because it lacked jurisdiction. Concerning plaintiffs alternate remedies, in which they sought to restrict the City Council's discretion in authorizing specific expenditures, the trial court concluded that plaintiffs' claims were nonjusticiable political questions and because it lacked jurisdiction, dismissed these claims as well.
 

 Plaintiffs appealed the trial court's ruling to the court of appeals. Because the court of appeals' jurisdiction excludes municipal election contests,
 
 [3]
 
 we accepted this case for review upon referral from that court.
 
 [4]
 

 
 *663
 
 III. Analysis
 

 A. Plaintiff's first claim is a ballot title contest and therefore time-barred by the statute of limitations
 

 We first address plaintiffs' claim that Referred Issue 2A is invalid because it includes four separate purposes, thereby requiring voters to vote for all of them collectively, against all of them collectively, or none at all. Because we construe this claim to be a challenge to the content of the ballot itself on the basis of multiple subjects, the statute of limitations forecloses suit.
 
 [5]
 

 Pursuant to section 1-11-201(8), a party may contest the results of a ballot question on several grounds. Among the causes listed in that section are the inclusion of illegal votes in election results, errors by election judges, and an election official's misconduct which changed the result of the election.
 
 [6]
 

 In addition to the causes listed in section 1-11-201(8) to challenge election results, seetion 1-11-208.5 provides parties with a way to contest a ballot title itself. Included in this section is a statute of limitations provision which requires that the contestor file a complaint within five days after the title of the ballot issue or ballot question is set by the political subdivision. § 1-11-208.5(2), 1 CRS. (2002). The procedure provided in this section is the exclusive means to contest or otherwise challenge the order of the ballot or the form or content of the ballot title. § 1-11-208.5(5).
 
 [7]
 

 Plaintiffs concede that the time to challenge Referred Issue 2A had long since passed by the time they filed their complaint. However, plaintiffs argue that none of the grounds upon which a party may contest an election result on a ballot issue included in section 1-11-201(8) is applicable here. Because their challenge is not a ballot title contest, they contend that the statute of limitations in section 1-11-208.5(2) does not apply to bar the claim. Plaintiffs additionally argue that our holding in City of Denver v. Hayes, 28 Colo. 110, 63 P. 311 (1900), renders the failure to challenge the content of the ballot title within the five day statute of limitations period irrelevant and immaterial
 

 Reviewing the statutory language of see-tions 1-11-201(8) and 1-11-208.5, we disagree with plaintiffs' argument for two reasons. First, section 1-11-201(8) states that a ballot question may be contested on the enumerated grounds provided. Use of the word "may" suggests that the list of permissible purposes to contest the result of a ballot issue is not exhaustive. See, eg., People v. Miller, 890 P.2d 84, 98 n. 15 (Colo.1995). Second, section 1-11-208.5 specifically pro
 
 *664
 
 vides parties with a way to challenge the form or content of a ballot title and provides exclusive procedures-including a five day statute of limitations period-which govern such challenges.
 

 Nor do we find persuasive plaintiffs' argument that Hayes is controlling. In Hayes, we held that bonds issued for several purposes are invalid unless each purpose and the amount proposed are separately submitted for voter approval or rejection. 28 Colo. at 115, 68 P. at 818. However, the timeliness of filing a ballot title challenge was not at issue in Hayes, which we decided nearly a century before the general assembly enacted section 1-11-208.5. See Contests concerning ballot order or ballot title-ballot issue or ballot question elections, ch. 200, § 64, 1994 Sess. Laws 1176. Thus, under our current statutory scheme, the statute of limitations is a threshold requirement any party contesting a ballot title must observe. See Molleck v. City of Golden, 884 P.2d 725, 727 (Colo.1994).
 
 [8]
 

 Plaintiffs' argument that the ballot issue was invalid because it contained multiple purposes is clearly a challenge to the form or content of the ballot title. Because section 1-11-208.5(2) requires that all challenges to the form or content of a ballot title must be filed within five days after the title of the ballot issue is set, and because plaintiffs filed their claim long after the statute of limitations period expired, we hold that plaintiffs claim challenging the content of the ballot title is time-barred.
 

 B. Plaintiffs' remaining claims do not present political questions
 

 Plaintiffs additionally contend that the City's expenditures of bond proceeds were contrary to the voter-approved purpose and were not within the City's discretion. According to plaintiffs, the City not only failed to spend bond proceeds on enumerated purposes in Referred Issue 2A, but also spent proceeds on non-enumerated purposes when it (1) purchased land for the development of the golf course; (2) used bond funds for numerous purposes not included in Referred Issue 2A; and (8) failed to construct a satellite community center despite the fact that Referred Issue 2A provided for the construction of that facility.
 

 The trial court concluded that because these claims were political questions, it lacked jurisdiction to address them and granted the City's motion to dismiss. We disagree.
 

 While courts must refrain from reviewing controversies concerning policy choices and value determinations that are constitutionally committed for resolution to the legislative or executive branch,
 
 [9]
 
 the trial court need not invade the City Council's province to resolve the issues in this case. Instead, plaintiffs' arguments require a determination of whether the City's choices to expend bond proceeds were properly within its discretion, which does not require formulating of legislative policy or developing standards not legal in nature. In addition, we have previously resolved questions concerning a City's discretion to spend bond proceeds without running afoul of the political questions doctrine. See, eg., McNichols v. City & County of Denver, 120 Colo. 380, 209 P.2d 910 (1949); City & County of Denver v. Currigan, 147 Colo. 125, 362 P.2d 1060 (1961); Abts v. Bd. of Educ., 622 P.2d 518 (Colo.1980). For all of these reasons, the trial court had jurisdiction to consider plaintiffs' claims and the City's motion to dismiss.
 

 
 *665
 
 Because the parties submitted materials outside of the pleadings, including affidavits and contracts, the trial court may review these documents and if it determines that no genuine issue as to any material fact exists, convert the City's motion to dismiss to a motion for summary judgment as a matter of law. Alexander v. Morrison-Knudsen Co., Inc., 166 Colo. 118, 123, 444 P.2d 397, 399-400 (1968); Wheeler v. Hurdman, 825 F.2d 257, 260 (10th Cir.1987)(notice requirement satisfied when both parties submit materials beyond pleadings in support of or opposing a motion to dismiss).
 
 [10]
 

 Thus, we remand this case to the trial court to resolve plaintiffs' claims originally dismissed for lack of jurisdiction because of the political question doctrine, either on summary judgment or at trial. To guide the trial court's review of plaintiffs' claims and because both parties briefed and argued this issue to us, we review the law governing a municipality's discretion concerning the expenditures of bond proceeds.
 

 C. Expenditures that do not materially depart from the purpose of a bond measure and necessary expenditures incidental to an authorized purpose are permissible
 

 We have always taken an expansive view of a municipality's discretion to expend bond proceeds. Considering our precedent on this subject, and because modern times require a degree of discretion for municipalities financing and supervising complex projects, we hold that expenditures that do not materially depart from the purpose of a bond measure and necessary expenditures incidental to an authorized purpose are properly within a municipality's discretion, and therefore permissible.
 
 [11]
 

 That discretion is limited in part by Article XI, § 6 of the Colorado Constitution, which provides that "no such debt shall be created unless the question of incurring the same be submitted to and approved by a majority of the qualified taxpaying electors voting thereon," with certain exceptions not applicable here.
 
 [12]
 
 In Hayes, we construed a similar constitutional provision concerning the creation of municipal debt to preclude the submission of separate and distinct purposes on a single ballot proposition, on the theory that the voter is deprived of the right to vote for one purpose and against others. 28 Colo. at 114-15, 68 P. at 818 (addressing Colorado Constitution Art. XI, § 8 (repealed 1970); Abts, 622 P.2d at 523.
 
 [13]
 

 In addition to constitutional and charter restrictions, a city must observe several
 
 *666
 
 requirements to issue bonds and expend proceeds: (1) the question submitted to voters must be specific and apprise them of the particular purpose for which the bonds are proposed to be issued; (2) the purpose must not be misleading; (8) the proceeds of the bonds must be spent for the purpose for which they were voted; and (4) if the city expends bond proceeds for the approved purpose, the judgment and discretion concerning those expenditures are reserved for city officials, not the courts. McNichols, 120 Colo. at 385, 209 P.2d at 912-13; Friends of Chamber Music v. City and County of Denver, 696 P.2d 309, 319 (Colo.1985).
 

 We have applied these requirements and on several occasions, held that a city's decision to expend bond proceeds for a use that materially departs from either an approved purpose or the terms of an authorizing ordinance exceeds its discretion. For example, in McNichols, the City of Denver issued voter-approved bonds to improve and equip a hospital but instead, used the funds to build a facility for Bureau of Public Welfare employees. 120 Colo. at 382, 209 P.2d at 911. Because the approved purpose to construct hospital facilities was entirely different from the modified use to house administrative staff, such a modification did not fall within the range of reasonable discretion and was improper. Id. at 391, 209 P.2d at 915.
 

 Additionally, in Currigan we reviewed a bond proceed expenditure for fifteen specific public improvements. If the city completed all fifteen improvements and did not exhaust the bond proceeds, it could apply the balance of the funds to a group of five additional enumerated public improvements. 147 Colo. at 127, 362 P.2d at 1062. The city completed the first fourteen of the fifteen projects, but determined that the fifteenth was not only undesirable, but also would have created a public hazard and amounted to a waste of public funds. As a result, the city abandoned the fifteenth project and substituted it for one of the five additional public improvements. However, the projects were not interchangeable, and the completion of the primary projects was a condition precedent to the secondary projects. Accordingly, project substitution was a material departure from the terms of its own authorizing ordinance submitted to voters and therefore not within the city's discretion. Id. at 182-83, 362 P.2d at 1064-65.
 
 [14]
 
 See also Friends of Chamber Music, 696 P.2d at 320 (use of admissions tax proceeds to retire bonds was not an illegal change in the bond ordinance even though voters approved ad valorem property taxes to retire the bonds).
 

 Although a city may not materially depart from an approved purpose, we have never so narrowly limited municipalities to prohibit expenditures for uses that are necessary and incidental to that purpose. We find Johnson v. McDonald, 97 Colo. 324, 49 P.2d 1017 (1935) persuasive support for this principle. In that case, the state issued interest-bearing warrants for funds advanced by the federal government to be used for the construction, maintenance, and supervision of highways. We held that the payment of bank and trust company charges was not a diversion of the funds from other than road purposes, and therefore, the state's payment of charges was allowable. Id. at 346, 49 P.2d at 1028.
 

 If we were to hold otherwise, municipalities would be required to itemize all conceivable expenses in ballot titles. Some of these expenses are foreseeable, while others inevitably are not. Precluding a city from making expenditures properly within its discretion would hamper a city's ability to fulfill its obligations to its residents, implement plans, and adapt to constantly changing cireum-stances. As we are reminded by the United States Supreme Court, "We must remember that the machinery of government would not work if it were not allowed a little play in its
 
 *667
 
 joints." Bain Peanut Co. v. Pinson, 282 U.S. 499, 501, 51 S.Ct. 228, 75 L.Ed. 482 (1931).
 

 Whether modifications materially depart from the purpose of a bond measure and whether necessary expenditures are incidental to an approved purpose are to be resolved by the trial court.
 
 [15]
 
 Hence, considering our review of applicable law, the task for the trial court on remand is to determine whether the City's expenditures challenged by plaintiffs were properly within the City's discretion.
 

 IV. Conclusion
 

 For the reasons stated, we affirm the judgment of the trial court that plaintiffs' ballot title challenge is time-barred and reverse the judgment of the trial court that plaintiffs' remaining claims are political questions. We remand this case to the trial court to resolve plaintiffs' remaining claims consistent with this opinion.
 

 [1]
 

 . Specifically, the issue posed the following to voters:
 

 Shall the City of Golden's debt be increased up to $26,420,000 with a repayment cost not to exceed $53,940,875, with no increase in any city tax or city tax rate, by the issuance of sales and use tax revenue bonds in a principal amount not to exceed $26,420,000, bearing interest at a net effective interest rate not to exceed 7.5% and maturing not later than 20 years after their date of issuance, to acquire and construct park and recreational facilities, including a satellite community center, family aquatic park, golf course with clubhouse and open space land for recreational purposes, such bonds to be secured by a pledge of all or a portion of the revenues from the City's sales and use taxes (which taxes shall not be repealed or reduced as to rate until the bonds and any refunding bonds are paid) deposited in the City's sales and use tax capital improvement fund, supplemented in part with available golf course revenues, all of which revenues, bond proceeds and any investment earnings thereon may be spent without regard to any other limitation on the collection or spending of revenues in the Colorado Constitution or any other law? (Emphasis added.)
 

 [2]
 

 . These tasks, as alleged in plaintiffs' complaint, were the reclamation of a solid waste dump, . flood control, rock stabilization on private property, grading, reclamation and seeding of private property, storm water detention for private property, relocation of power lines across private property, and the purchase of land for the golf course. However, several of these tasks were contested by the City in affidavits filed in conjunction with its motion to dismiss.
 

 [3]
 

 . § 13-4-102(1)(g), 5 C.R.S. (2002) provides:
 

 (1) Any provision of law to the contrary notwithstanding, the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts, the probate court of the city and county of Denver, and the juvenile court of the city and county of Denver, except in:
 

 (g) Summary proceedings initiated under articles 1 to 13 of title 1 and article 10 of title 31, CRS.
 

 [4]
 

 . Plaintiffs raised the following issues on appeal:
 

 1. Whether the trial court erred in dismissing the Resident Taxpayers' claims for declaratory, injunctive, and equitable relief, based
 
 *663
 
 on its conclusion that such claims presented nonjusticiable political questions?
 

 2. Whether the trial court erred in dismissing the Resident Taxpayers' claim that the bonds issued pursuant to Referred Issue 2A and Ordinance No. 1538 were invalid, based on its conclusion that such claim was barred by the statutes of limitation applicable to election contests?
 

 3. Whether the trial court erred in dismissing the Resident Taxpayers' claim that the City's proposed use of bond proceeds, as set forth in Resolution No. 1210, was contrary to the purposes approved by the voters and not within the City's discretion?
 

 4. Whether the trial court erred in dismissing the Resident Taxpayers' claim that the City was estopped from using the bond proceeds in a manner contrary to its representations and promises?
 

 [5]
 

 . Plaintiffs additionally argue that the ordinance authorizing the issuance and sale of bonds is invalid because it authorizes expenditures for multiple subjects enumerated in the referendum. This challenge concerns the scope of a city's discretion to expend bond proceeds, which we address in Part C of this opinion.
 

 [6]
 

 . § 1-11-201(3) provides:
 

 The result of any election to determine a ballot issue or ballot question may be contested on any of the following grounds:
 

 (a) That illegal votes were received or legal votes were rejected at the polls in sufficient numbers to change the result of the election;
 

 (b) That an election judge or canvass board has made an error in counting or declaring the result of an election that changed the result of the election; or
 

 (c) That an election judge, canvass board, or member of a canvass board has committed misconduct, fraud, or corruption that changed the result of the election.
 

 [7]
 

 . - Accordingly, we limit our analysis to the statute of limitations in § 1-11-203.5(2) despite the trial court's reference to the statute of limitations provision in § 1-11-213(4) in holding that the plaintiffs' claim was time-barred.
 

 [8]
 

 . We clarify that our analysis here does not invalidate our holding in Hayes. On the contrary, if a contest is timely, a party is free to argue our reasoning in that case.
 

 [9]
 

 . See Japan Whaling Ass'n v. American Cetacean Society, 478 U.S. 221, 230, 106 S.Ct. 2860, 92 L.Ed.2d 166 (1986); Colorado Common Cause v. Bledsoe, 810 P.2d 201, 205 (Colo.1991)(citing Baker v. Carr, 369 U.S. 186, 217, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962))("Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made.").
 

 [10]
 

 . - For summary judgment, the nonmoving party is entitled to the benefit of all favorable inferences that may be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. See, eg., Martini v. Smith, 42 P.3d 629, 632 (Colo.2002).
 

 [11]
 

 . This is consistent with approaches of other jurisdictions. See, eg., Coggins v. City of Asheville, 278 N.C. 428, 180 S.E.2d 149, 153-54 (1971)("in planning large permanent improvements the governing authorities look ahead to the future fulfillment of the construction plans. The authorities will inspect and examine the work as it progresses and minor changes from time to time are expected if conditions change and unforeseen developments occur."); State ex. rel. Traeger v. Carleton, 242 Minn. 296, 64 N.W.2d 776, 778 (1954)("It is probably true that the city may make minor changes in the plans but may not radically alter them so as to construct an entirely different system from that voted upon by the people."); Arkansas-Missouri Power Corp. v. City of Kennett, 348 Mo. 1108, 156 S.W.2d 913, 917 (1941)("where a corporation, private or municipal, is given power to perform a certain act, it is necessarily left with large discretion as to the method to be adopted and the manner in which such act is to be performed ... [the exact terms and provisions to be inserted therein must, in the nature of things, vary with the particular conditions surrounding this specific project.").
 

 [12]
 

 . One such exception accommodates provisions to the contrary provided by a city's charter. Section 12.3 of the Charter for the City of Golden, which is consistent with Article XI, § 6, provides:
 

 No bonds or other evidence of indebtedness payable in whole or in part from the proceeds of general property taxes or to which the full faith and credit of the city are pledged, shall be issued, except in pursuance of an ordinance, nor until the question of their issuance shall at a special or general election, be submitted, to a vote of the taxpaying electors and approved by a majority of those voting on the question....
 

 [13]
 

 . In Abts, we set forth the test to determine what constitutes more than more purpose. We review whether there exists a natural relationship between the various structures or objects
 
 *666
 
 united in one proposition so that they form one rounded whole. 622 P.2d at 523. In that case, we held that expenditures to construct, equip, and furnish two school buildings and to acquire additional school grounds and improvements constituted a single, permissible purpose. Id. at 525.
 

 [14]
 

 . We distinguish here terms from the purpose of a bond measure. Terms include specific conditions related to borrowing and repayment of bonds, as well as the sequence in which money can be expended, see Currigan, 147 Colo. at 127, 362 P.2d at 1062, whereas a purpose is the object for which the measure is passed. At issue in this case is whether the City's expenditures materially departed from the voter approved purpose of the bond.
 

 [15]
 

 . Although plaintiffs' challenge to the ballot measure itself is time-barred, we note that the trial court must address the underlying issue of whether the projects included in the referendum constitute more than one purpose before it can reach plaintiffs' claims on remand.