QUESTION PRESENTED AND CONCLUSION Question: Does Colorado law permit a school district to contract with a financial institution so that investment interest earned on moneys in the district's bond redemption fund ("BRF") are paid to the district's general fund, thus making such investment earnings available for general fund purposes, instead of being used solely for BRF purposes?
Answer: No. Investment interest earned on BRF moneys must be used solely for BRF purposes. A school district may not contract to have such investment earnings credited to its general fund.
 BACKGROUND
The Deputy State Treasurer asks whether § 22-42-119(1), C.R.S. (2005), requires that not only the BRF taxes themselves, but also all investment earnings on a school district's BRF moneys be used "only for payment of interest upon and for the redemption of such bonds." The statute reads in material part as follows:
 Bond fund — payment and redemption. (1) [Taxes to fund voter — approved school bonds] shall be collected in the same manner as other school district taxes and when collected shall be placed by the county treasurer in the bond redemption fund of said school district. The moneys in said fund shall be used only for payment of interest upon and for the redemption of such bonds . . .; but the board of education of said school district may withdraw, or . . . may instruct the third-party custodian administering the bond redemption fund . . . to withdraw, any or all of such moneys credited to said fund which are temporarily not needed to satisfy the obligations of bonded indebtedness, for the purpose of depositing or investing such moneys in the manner prescribed by law.
§ 22-42-119(1), C.R.S. (2005) (emphasis added). The investment earnings at issue here fall within the last clause of the subsection quoted above — that is, the investment of BRF moneys that "are temporarily not needed" to satisfy bonded indebtedness.
 DISCUSSION
Subsection 22-42-119(1) contains no explicit language concerning the disposition of investment earnings derived from BRF moneys. However, the school financing statutes, when read as a whole, compel the conclusion that investment interest earnings must be paid to and used solely for BRF purposes. This conclusion is also supported by the common law rule of "interest follows principal," by the Colorado constitutional provision on public indebtedness, and by voters' expectations when voting on a bond issue.
A. SCHOOL FINANCE STATUTES
First, § 22-42-119(1) must be read in the context of title 22 as a whole. As the Colorado Supreme Court has stated:
 Our primary task in construing statutes that are part of an overall statutory scheme is to give effect to the intent of the General Assembly. When the General Assembly adopts a comprehensive regulatory program, the legislation should be construed as a whole, giving effect to all of its parts in the context of the entire scheme. Statutes related to the same subject matter are construed in pari materia, in order to give consistent, harmonious, and sensible effect to all of their parts.
Left Hand Ditch Co. v. Hill, 933 P.2d 1, 3 (Colo. 1997) (citations omitted). See also Krieg v. Prudential Property andCas. Ins. Co., 686 P.2d 1331, 1335 (Colo. 1984) (goal is to "arrive at a construction that harmonizes a particular provision with the statutory whole"); Petition of S.O., 795 P.2d 254, 258
(Colo. 1990) (courts must choose construction of statute which "best effectuates the purposes of the legislative scheme"). Reading § 22-42-119(1) in the context of title 22 as a whole leads to the conclusion that the legislature intended that investment earnings on BRF moneys should be credited back to the BRF and used for BRF purposes.
The General Assembly has enacted numerous provisions in title 22 to govern school finance. A number of those provisions demonstrate a legislative preference to preserve all moneys associated with the BRF inviolate, and to use such moneys only for payment of principal and interest on bonded indebtedness. Beginning with § 22-42-119(1) itself, the statutory language and the entire statutory scheme indicate careful delineation and separation between a district's general fund and other district funds, particularly the BRF.[1] See, e.g., § 22-45-103
(for accounting purposes, school district moneys are divided into seven separate funds with specific requirements for each; general fund includes all district revenues except, inter alia,
revenues attributable to BRF).
Another provision of § 22-45-103 also affirms that the legislature was establishing a self-contained scheme for the BRF, and that it intended that all moneys associated with the BRF inhere to the benefit of the BRF, rather than being used for alternate purposes. Excess moneys in the BRF "shall be used to reduce the levy for the bond redemption fund in future years or to pay any then existing obligations of the district payable from the bond redemption fund at a date earlier than they become due." § 22-45-103(1)(b)(IV), C.R.S. (2005). See also Board of CountyComm'rs v. Bainbridge, Inc., 929 P.2d 691, 710 (Colo. 1996) (school accounting and reporting statute establishes funds for various purposes; expenditures from each fund limited to its specified purpose; BRF revenues may be used only for "obtaining or using real property or equipment for school buildings, sites, or structures").
Next, § 22-42-102(2)(a) authorizes districts to contract bonded indebtedness for certain delineated purposes. None of these purposes includes augmentation of the general fund. While §22-42-102(2)(b) provides that the specified purposes "shall be broadly construed," it would be unreasonable to stretch such purposes to include augmenting a district's general fund. The general fund is used for normal operating expenses, as opposed to the special one-time purposes related to the district's physical plant specified in § 22-42-102(2)(a). Thus, § 22-42-102(2)(a) does not contemplate that a district can incur bonded indebtedness for general fund purposes, which would be the practical result if investment earnings on BRF moneys were credited to the general fund. To the contrary, borrowing for general fund purposes is limited to short-term debt to be repaid within six months of the close of the fiscal year. § 22-40-107, C.R.S. (2005). See also Abts v. Board of Educ., 622 P.2d 518
(Colo. 1980).
In sum, various statutes that are a part of the school finance law demonstrate that the General Assembly intended that BRF moneys be circumscribed and kept apart from general fund moneys and purposes.
B. THE COMMON LAW
Additionally, the common law[2] supports the conclusion that interest earned on BRF moneys must be used solely for BRF purposes. As a general rule, all investment earnings should be credited to the principal from which they arise. The U.S. Supreme Court discussed the English common law doctrine that "interest follows principal" in Phillips v. Washington Legal Foundation,524 U.S. 156 (1998). As the Supreme Court in that case concluded,
 The rule that "interest follows principal" has been established under English common law since at least the mid-1700's. . . . [I]nterest shall follow the principal, as the shadow the body.
524 U.S. at 165 (internal citations and quotation marks omitted).See also Fabulous Pharmacies, Inc. v. Beckwith, 449 U.S. 155,162 (1980) (same).
This common law doctrine has also been widely applied in the area of public funds. See, e.g., Queen v. Moore,340 S.E.2d 838, 841 (W.Va. 1986) (with regard to student activities fees, in absence of lawful separation, interest presumed to be an accretion to the fund earning it); State v. Dickherber,576 S.W.2d 532, 537 (Mo. 1979) (general principle that interest on public funds designated for specific purpose follows those funds, in absence of unequivocal legislative expression otherwise). Seealso State v. Montoya, 575 P.2d 605 (N.M. 1978) (interest accrued on bonds for one project may not be diverted to another related bond project).
Application of this doctrine to the question presented leads to the conclusion that, just as the principal contained in the BRF is by legislative mandate devoted solely to payment of bonded indebtedness, the interest earned on that principal is to be similarly circumscribed.
C. CONSTITUTIONAL PROVISION ON PUBLIC INDEBTEDNESS
Moreover, article XI of the Colorado Constitution, entitled "Public Indebtedness," suggests that not only is the public debt of political subdivisions, including school districts, to be strictly controlled, but that repayment of such debt is a priority. In particular, section 6(1) provides in material part as follows:
 No political subdivision of the state shall contract any general obligation debt by loan in any form . . . except by adoption of a legislative measure which shall be irrepealable until the indebtedness therein provided for shall have been fully paid or discharged, specifying the purposes to which the funds to be raised shall be applied and providing for the levy of a tax which together with such other revenue, assets, or funds as may be pledged shall be sufficient to pay the interest and principal of such debt. . . .
COLO. CONST. art. XI, § 6(1). Using interest earned in BRF accounts for BRF purposes is consistent with article XI's mandate to use interest to fully pay and discharge debt.
D. VOTER EXPECTATIONS
Finally, reference must also be made to the intent of the voters in approving the bond measure in question. The ballot question presented to voters states only that the investment earnings are not to be counted for TABOR purposes; it nowhere indicates that such earnings will be credited to the district's general fund.
In Busse v. City of Golden, 73 P.3d 660 (Colo. 2003), the Colorado Supreme Court dealt with a case concerning the utilization of voter-approved municipal bond moneys. The court held that while the city could validly make "expenditures incidental to [the voter-approved] purpose," it could not use bond moneys in a way that would "materially depart from the [voter-approved] purpose of a bond measure." 73 P.3d at 665-66. This reasoning is equally applicable here, and reinforces the conclusion that not only the BRF moneys themselves, but all investment earnings thereon must be devoted to the voter-approved purpose. When voters approve a bond issuance, as those questions are customarily formulated,[3] the electorate would expect that all moneys associated with the BRF will be used to pay bonded indebtedness, rather than being utilized for general fund purposes.
 CONCLUSION
For the above-stated reasons, investment interest earned on BRF moneys must be used solely for BRF purposes. Therefore, a district may not contract to have such investment earnings credited to its general fund.
Issued this 13th day of March, 2006.
 _________________________ JOHN W. SUTHERS, Colorado Attorney General
[1] This is also consistent with generally accepted accounting principles ("GAAP").
[2] Pursuant to § 2-4-211, C.R.S. (2005), English common law is "the rule of decision and shall be considered as of full force" in Colorado unless it is "repealed by legislative authority."
[3] Similar to the typical ballot language at issue here, the municipal bond measure in Busse specified that the investment earnings on the bond proceeds could be spent without regard to constitutional (TABOR) limitations and those of any other law.73 P.3d at 661 n. 1.